Lorenz Wolffers (FBN:LW6950)
lorenz@wolfferscohen.com
Wolffers Cohen & Edderai LLP
325 W. 38th Street, Suite 1502
New York, NY 10952
P: 646-807-8543 F: 646-619-4358

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BETTER MORNINGS, LLC et al<br><br>    Plaintiffs,<br><br>vs.<br><br>JOSEPH NILSEN and DIGITAL CHECKMATE, INC.<br><br>    Defendants. | Case No.: 2:19-cv-03854<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Better Mornings, LLC and Island Breeze, LLC (collectively, "Nutragroup"), by their undersigned attorneys, allege, with knowledge with respect as to their own acts and on information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1. Nutragroup is a dietary supplement provider based in San Juan, Puerto Rico. Its primary business is selling dietary supplements to United States consumers, including weight loss supplements, hormonal supplements, and the like.

2. Since April 2019, Defendant Joseph Nilsen, individually and through his company Digital Checkmate, has engaged in a pattern of interfering with the normal commercial operation of Nutragroup's virtual storefronts on the internet market platform Amazon.com by attacking Nutragroup product listings in an attempt to get particular products removed from sale by Amazon, and publishing false and defamatory information to dissuade customers from purchasing the products.

3. Defendants' attacks primarily involve using unauthorized backdoors to improperly change Nutragroup product listings and insert false information. For instance, past attacks have modified product listings to state that Nutragroup products contain banned drugs and chemicals, or stating that the product is a choking hazard.

4. Defendants have also flooded Nutragroup product listings with baseless negative reviews, and used social media to spread defamatory statements and misinformation about Nutragroup and Nutragroup's founder and chief executive, Kevin Thobias.

5. Nutragroup brings this action to restrain the Defendants from further interfering with and damaging its business interests by unlawful and malicious conduct, including false advertising under 15 USC §1125(a), product disparagement, commercial defamation, and deceptive business practices under New York Gen. Bus. Law § 349.

## PARTIES

6. Plaintiff Better Mornings, LLC is a Puerto Rican limited liability company with headquarters at 151 Calle de San Francisco St., Suite 200, San Juan, PR 00901.

7. Plaintiff Island Breeze, LLC is a Puerto Rican limited liability company with headquarters at 151 Calle de San Francisco St., Suite 200, San Juan, PR 00901.

8. Defendant Joseph "Joe" Nilsen is an individual resident in Nassau County, New York. Mr. Nilsen is the CEO of Digital Checkmate, Inc., and controls or is a partner in a number of business ventures selling dietary supplements on Amazon.com and therefore a direct competitor of Nutragroup

9. Defendant Digital Checkmate, Inc. is a New York corporation with its principal place of business in Nassau County, New York.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the claims of this Complaint under the Lanham Act, 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331, 1332, and 1338. This Court has supplemental jurisdiction over Nutragroup's state claims pursuant to 28 U.S.C. § 1367 because they are so related to Nutragroup's federal law claims that they form part of the same case or controversy.

11. This court has personal jurisdiction over Joseph Nilsen because he is a citizen of the United States resident in this district. This court has personal jurisdiction over Digital Checkmate because it is organized and exists under the laws of the state of New York and its principal place of business is in this district.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this district and Defendants are subject to personal jurisdiction in this district.

## STATEMENT OF FACTS

13. Better Mornings, LLC was originally formed by Kevin Thobias in 2016. Mr. Thobias subsequently founded Island Breeze, LLC to pursue other customers in the sports nutrition market. Better Mornings and Island Breeze are subsidiaries of Nutragroup Holdings, LLC. The purpose of the Nutragroup companies is to sell high-quality dietary supplements directly to consumers.

14. Virtually all of Nutragroup's sales are made through virtual "storefronts" on Amazon.com. Storefronts are sub-stores operated on Amazon's domain by independent sellers. Nutragroup's major storefronts are Better Mornings, LLC ("Better Mornings") and "Brute Nutrition."

15. Nutragroup's total revenue in 2018 was more than $15,000,000.00.

16. Nutragroup was on pace to generate approximately $22,000,000 of revenue in the first half of 2019 before Defendants' attacks began. However, after three months of ongoing attacks, continuing as of the date of this writing, Nutragroup estimates it will generate approximately $7,000,000 in first-half revenue.

17. Nutragroup promotes its products primarily through product listings on Amazon.com. These product listings are associated with a particular Nutragroup storefront, such as Better Mornings.

18. Amazon product listings are essentially advertisements created with the intention of influencing customers to purchase the product. A product listing generally contains

images of a given product, text promoting the quality and efficacy of the product, and reviews by customers who have purchased the product.

19. Mr. Thobias was introduced to Defendant Joseph Nilsen by email on July 19, 2018. At that time Mr. Nilsen worked for "Seller Strategies," a company providing Amazon reimbursement services to third parties. Amazon reimbursement servicers ensure that Amazon has properly reimbursed sellers for items provided to Amazon fulfillment centers.

20. In early August, 2018, Mr. Nilsen was given access to one of Nutragroup's storefronts, Better Mornings, to help find potential missed reimbursements. Mr. Thobias was initially pleased with the service Mr. Nilsen provided.

21. As the relationship between Mr. Thobias and Mr. Nilsen grew closer, Mr. Thobias offered to form a partnered brand with Mr. Nilsen and launch a ketogenic weight loss supplement, "Complete Keto Diet."

22. On September 14th, 2018, Complete Keto Diet was sold on an Amazon.com storefront using the merchant name "Elle, Ink." Elle, Ink was listed under the name of Kristen Leccese, Mr. Nilsen's girlfriend and Vice President of Digital Checkmate.

23. By late September, 2018, Complete Keto Diet was beginning to sell well. Anticipating future business with Mr. Nilsen, Mr. Thobias began introducing him to certain Nutragroup supplement manufacturers.

24. However, as Mr. Nilsen's stake in the dietary supplement market grew, he became increasingly hostile towards competing sellers.

25. During the period from November, 2018 through January, 2019. Mr. Nilsen began using malicious flat files to insert "red flag" keywords into dozens of competing product listings, and change the product images to "Guy Fawkes" masks.

26. Flat files are used by Amazon sellers to provide product images, characteristics and other information necessary to a product listing. For example, if an Amazon seller wishes to sell a t-shirt, they may upload a flat file with an image of the t-shirt, a description of its material, and other relevant information.

27. In a flat file attack, a hacker either claims to be a seller of a particular product, or uses a virtual private network or similar mechanism to mask his identity and "trick" the product listing management system into believing he is the product's seller. The hacker then uploads a malicious flat file, which changes the image and/or product information in the listing to something irrelevant or damaging, such as a Guy Fawkes mask, or alters the listing to include "red flag" keywords.

28. Red flag keywords are problematic words or phrases which trigger Amazon's product review process. For instance, a product listing cannot state that a product contains prescription drugs, or that the product will cure cancer.

29. When red flag keywords are added to a listing, Amazon's product review system will automatically take the listing down while it is being reviewed by Amazon's product review team. A seller cannot sell the targeted product on Amazon during the product review period.

30. Nutragroup suspected that Mr. Nilsen was behind these flat file attacks on other sellers, because he had previously shared a flat file containing similar images and red flag keywords.

31. Concerned by Mr. Nilsen's behavior, Nutragroup and Mr. Thobias began distancing themselves from Mr. Nilsen.

32. At the same time, Mr. Nilsen was becoming unreasonably suspicious of other sellers. He made a number of emotional telephone calls to Mr. Thobias, insisting that other sellers were conspiring against him. He also continued to attack his competitors' product listings.

33. In mid-March, 2019, Mr. Nilsen began accusing Nutragroup and Mr. Thobias of trying to damage his Amazon sales by listing a product with the same UPC as one of Mr. Nilsen's products. He stated that he considered this error to be an attack on him personally. Mr. Nilsen appears to have used this incident as a pretext to attack Nutragroup and undermine its business, with the intention of capturing Nutragroup's market share, as he had done previously to other competing sellers.

34. On March 29th, 2019, an agent from Amazon's Transactions Risk Management Department, who gave his name as "Mike," called Mr. Thobias's mobile phone from a blocked number.
35. Mike informed Mr. Thobias that his seller account was about to be suspended. Believing it was a prank call, Mr. Thobias hung up.
36. Minutes later, Nutragroup's Better Mornings seller account was suspended.
37. Mike then called back and questioned Mr. Thobias about the activity on his account. In particular, he asked if Mr. Thobias was familiar or affiliated with Mr. Nilsen, without any prompting from Mr. Thobias.
38. Taken together, these facts suggest that Mr. Nilsen was involved in the process of having Better Mornings taken down.
39. Mr. Thobias then began cooperating with Amazon, and gave the Risk Management department information about Mr. Nilsen and his malicious seller activity.
40. On April 3rd, 2019, Better Mornings' seller account was reinstated.
41. On April 19th, 2019, Mr. Nilsen began targeting Nutragroup product listings on the Better Mornings storefront via flat file attacks.
42. When Mr. Nilsen uploads a malicious flat file, the file alters Nutragroup product listings by inserting red flag keywords, irrelevant images, or false statements about the characteristics and qualities of the products. These attacks have included:
    a. falsely representing that certain products include phentermine, a prescription-only appetite suppressant which cannot be sold on Amazon;
    b. falsely representing that certain products contain banned chemicals, such as phenolphthalein, that cannot be sold on Amazon;
    c. falsely representing that certain products cure cancer, diabetes, AIDS, and other illnesses, in violation of Amazon's seller guidelines;
    d. moving products to unrelated sections of the website, such as lawn care; and

e. changing product images to irrelevant images of Mr. Thobias's sports cars, Guy Fawkes masks, or chess pieces, an apparent reference to the chess theme used by Digital Checkmate.

43. When Amazon's automated product review bot detects these red flag keywords in Nutragroup product listings, the listings are automatically taken down and marked for review by Amazon's Restricted Products Team for prohibited activity.

44. The affected product listings, which are identified by their Amazon Standard Identification Numbers ("ASINs"), are generally down for 2-4 business days during the review process, causing a substantial drop in sales and concomitant loss of revenue.

45. Even where product listings are not taken down by red flag keywords, product sales drop because the listings contain irrelevant images, or the product was listed in an improper section, such as lawn care, where it would not attract traffic from supplement buyers.

46. In particular, on April 19, 2019, Mr. Nilsen executed a flat file attack on the Better Mornings storefront. Mr. Nilsen uploaded a flat file that altered the product listing for the Prime Labs' "Prime Test" supplement, ASIN B01MQ1JLWY, and falsely represented that the product contains Niubian, a "male enhancement" product that cannot be sold on Amazon. The Amazon products team responded by taking down the Prime Test product listing, so that it could not be sold for 4 days. This attack resulted in approximately $100,000.00 of lost sales.

47. On the same day Mr. Nilsen also executed a flat file attack against the Brute Nutrition storefront. The attack affected ASINs B07GM3YBQL, B07H4B4KWG, B07NVSBY74, B07NVN7GSK, and B07NVTXZZJ. Mr. Nilsen altered the product listings to falsely represent that the products contained "Drug Legal Steroids," in violation of an Amazon policy that prohibits selling or listing products containing steroids. The Amazon products team responded by taking down the affected listings, so that the products could not be sold for 6 days. This attack resulted in approximately $50,000.00 of lost sales.

48. After the attacks on April 19, 2019, a Nutragroup representative, Kelsie Spencer, contacted Amazon seller support to address the issue. Ms. Spencer was informed that another seller had uploaded identical flat files from two accounts, which enabled him to change Nutragroup product listings.

49. Nutragroup then took remedial steps by ensuring all potential product listing information was included in its own flat files, which prevented Mr. Nilsen from uploading malicious information into blank categories on the listing. This made it more difficult, but not impossible, for Mr. Nilsen to add keywords.

50. On April 28, 2019, Mr. Nilsen executed another flat file attack on Brute Nutrition ASIN B07GM3YBQL by inserting false product information contradicting Island Breeze's information. The Amazon Listing Evaluations team removed the product listing in order to verify the correct product information, so that the product could not be sold for 17 days. This attack resulted in approximately $170,000.00 of lost sales.

51. On May 22, 2019, Mr. Nilsen executed another flat file attack on the Better Mornings storefront. The ASINs affected were B01MQ1JLWY, B07H5W97J3, and B071VJ1XX6. Mr. Nilsen altered the product listings to falsely represent that the products were prescription-only and contained the ingredient testosterone. Amazon policy prohibits the sale or listing of prescription-only products. The Amazon products team responded by taking down the listings, so that they could not be sold for 2 days. This attack resulted in approximately $50,000.00 of lost sales.

52. On May 28, 2019, Mr. Nilsen executed a flat file attack on Brute Nutrition ASIN B07GM3YBQL. Mr. Nilsen altered the listing to falsely represent that the product contained Phenolphthalein as an "undeclared drug." Amazon policy prohibits the listing or sale on Amazon of products that contain undeclared drugs. The Amazon products team responded by taking down the product listing, so that it could not be sold for 9 days. This attack resulted in approximately $90,000.00 of lost sales.

53. On June 11, 2019, Mr. Nilsen executed a flat file attack on Brute Nutrition ASIN B07GM3YBQL. Mr. Nilsen altered the listing to falsely represent that the product presents a choking hazard. See Exhibit 1, Product Listing Screen Capture.

54. On June 14, 2019, Mr. Nilsen began attacking the Brute Nutrition storefront by leaving false and baseless negative feedback. Negative feedback harms a seller's reputation, and can lead to Amazon permanently suspending the account. While much of the feedback has been posted using random names, other feedback was left under the names of individuals connected to Mr. Thobias.

55. On June 27. 2019, Mr. Nilsen attacked Brute Nutrition ASIN B07GM3YBQL by leaving reviews stating that Brute Nutrition offers free products in exchange for product reviews. Offering any kind of compensation for reviews is a violation of Amazon policy, and can lead to permanent suspension of a seller's account. It also undermines the marketing value of genuine positive reviews.

56. On June 29, 2019, Mr. Nilsen executed a flat file attack on Better Mornings ASIN B01MQ1JLWY. Mr. Nilsen altered the listing to falsely represent that the product contains cannabidiol, or "CBD." Items containing CBD or other cannabinoids cannot be listed or sold on Amazon. The Amazon products team responded by taking down the product listing, so that it could not be sold for 3 days. To date this attack has resulted in approximately $100,000.00 of lost sales.

57. Other attacks against Nutragroup products occurred throughout the period discussed above.

58. Nutragroup has been in contact with Amazon since Mr. Nilsen's attacks began, and continues to work with Amazon's security team to monitor and limit the flat file attacks. While Nutragroup has had some success, Mr. Nilsen has changed his methods to continue damaging Nutragroup's business.

59. In particular, Mr. Nilsen purchases Nutragroup products through various Amazon buyer accounts. He then uses those accounts to leave 1-star reviews on the product listing

page, often making false statements about the products, such as claiming that they are "counterfeit" or contain "pure powdered caffeine."

60. Mr. Nilsen has also sought to damage Nutragroup's business and its relationship with Amazon by contacting Amazon and claiming that particular products are unsafe, counterfeit, or otherwise unfit for sale. These types of claims generally result in Amazon taking down the particular product listing while they attempt to resolve the purported safety issue with Nutragroup personnel.

61. Further, Mr. Nilsen attempted to damage Nutragroup's relationships with its third-party manufacturers by making false statements to those manufacturers directly. Nutragroup does not manufacture its supplements in-house and relies on such manufacturers to formulate its supplements.

62. On May 2, 2019, using the alias Mabelle Nollie, Mr. Nilsen sent an email to Peak Nutrition falsely stating, in substance, that Mr. Thobias and Better Mornings submitted false documents to the FDA in order to obtain approval to sell dietary supplements.

63. On May 2, 2019, using the alias Mabelle Nollie, Mr. Nilsen sent an email to Vox Nutrition falsely stating, in substance, that Mr. Thobias and Better Mornings submitted false documents to the FDA in order to obtain approval to sell dietary supplements.

64. On May 2, 2019, using the alias Mabelle Nollie, Mr. Nilsen sent an email to Adept Life Sciences email falsely stating, in substance, that Mr. Thobias submitted false documents to the FDA in order to obtain approval to sell dietary supplements.

65. The defamatory statements in these emails were similar. In particular, Mr. Nilsen wrote (errors in original text):

   f. "We am writing to you to inform you about some illegal activity that a client of your's is engaging in. This client's name is Kevin Thobias. He is a third-party seller on Amazon.com. Below, please find factual information that you should be made ware of as your company is responsible for supplying his various entities with dietary supplements."

|   |   |
|---|---|
| 1 | g. "Kevin Thobias is submitting falsified Food and Drug Administration (FDA) |
| 2 | Federal documents to obtain approval to sell in the dietary supplements category |
| 3 | on Amazon.com." |
| 4 | h. "We wanted to write to you to inform you of these acts that Kevin Thobias, |
| 5 | CEO of Better Mornings LLC, among many other entities, is doing are illegal, |
| 6 | unethical and dangerous as dietary supplements are ingested by Amazon.com |
| 7 | buyers. When he must resort to falsifying Federal documents to obtain this |
| 8 | ability to sell these very regulated products, he clearly does not meet Amazon's |
| 9 | requirements to sell the products that you are selling him, therefore, placing |
| 10 | countless lives at risk." See Exhibit 2, Email to Manufacturers. |

66. In addition to the email described above, Mr. Nilsen contacted Windy Shields, Adept Life Sciences' co-owner, on Skype and by telephone.

67. Ms. Shields has spoken to Mr. Nilsen on three occasions to date. In these calls Mr. Nilsen made disparaging remarks about Nutragroup, and admitted to Ms. Shields that he purchased Nutragroup products Amazon and shipped them to her facility. Ms. Shields has also stated that she received two packages containing Nutragroup supplements.

68. Mr. Nilsen also uploaded a video to Youtube.com in which John Zhou, an acquaintance of Mr. Thobias, discusses the "black hat", or malicious, actions Amazon sellers take to damage the business of other Amazon sellers. In the first few frames of the video, text was inserted falsely claiming that Mr. Thobias is Mr. Zhou's "Number #1 Customer," implying that Mr. Thobias had employed Mr. Zhou to attack other Amazon sellers.

69. On or about June 25, 2019, a Twitter account connected to Mr. Nilsen published an "Urgent Message" falsely stating that (errors in original text):

   a. Nutragroup is a "deceptive and dishonest" "organization of federal criminals operating in a cartel like fashion," and "utiliz[ing] their criminal ways to falsify and/or forge federal documents;"

   b. That Nutragroup is selling a "defective batch" of supplements;

    c. That Mr. Thobias is a "known bully" and a "sociopath." See <u>Exhibit 3, Urgent Message.</u>

70. The pattern of attacks detailed above is continuing as of the date of this writing.

71. Nutragroup has suffered significant losses as a consequence of Mr. Nilsen's behavior. As of the date of this writing, Nutragroup's total estimated losses are approximately $560,000.00.

### FIRST CAUSE OF ACTION

(LANHAM ACT FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a))

72. Nutragroup repeats and realleges paragraphs 1 through X as if fully set forth herein.

73. Defendants Joseph Nilsen and Digital Checkmate have uploaded malicious flat files to change Nutragroup product listings and insert false and misleading factual representations about the characteristics and qualities of Nutragroup's products. In particular, Defendants have falsely represented that Nutragroup products contain chemicals and drug formulations such as testosterone, phenolphthalein, Niubian, and phentermine, and present a choking hazard to consumers.

74. The foregoing claims and representations are literally false and Nutragroup does not make such claims with respect to any of its products.

75. Defendants have also purchased Nutragroup products from Amazon in bulk, and posted negative reviews and "seller feedback" on the relevant product listings falsely claiming that such products are counterfeit, expired, or otherwise inauthentic or unsafe.

76. Amazon product listings are publicly viewable and are essentially commercial advertisements of a particular product. The listings are intended to promote particular products and influence consumers to purchase these products. By altering these listings to make false representations, Defendants are making those representations "in commerce."

77. Nutragroup believes it has been and continues to be damaged by Defendants' false or misleading representations of fact through the diversion of sales, loss of control over its reputation, and loss of goodwill.

78. Defendants' bad faith false and misleading representations of fact regarding Nutragroup's products make this an exceptional case within the meaning of 15 U.S.C. § 1117.
79. Defendants know that their representations of fact are false or misleading.
80. Defendants' false or misleading representations of fact were done with bad faith and malice or reckless indifference to Nutragroup's and consumers' interests.
81. Defendants' continues to make false or misleading representations of fact regarding Nutragroup products and will continue to do so unless enjoined by this Court as provided by 15 U.S.C. § 1116.
82. Nutragroup is entitled to an award of Defendants' profits due to sales of the falsely or misleadingly represented products, any damages sustained by Nutragroup, and the costs of the action, pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

COMMERCIAL DEFAMATION OF NUTRAGROUP UNDER N.Y. COMMON LAW

83. Nutragroup repeats and realleges paragraphs 1 through X as if fully set forth herein.
84. Defendants Joseph Nilsen and Digital Checkmate have uploaded malicious flat files to change Nutragroup product listings and inserted false and misleading factual representations about the characteristics and quality of Nutragroup's products. In particular, Defendants have falsely represented that Nutragroup products contain chemicals and drug formulations such as testosterone, phenolphthalein, Niubian, and phentermine, and present a choking hazard to consumers.
85. Defendants purchased Nutragroup products from Amazon in bulk and posted baseless negative reviews and "seller feedback" on the relevant product listings, falsely claiming that such products were counterfeit, expired, or otherwise inauthentic or unsafe. Defendants' negative reviews and feedback are publicly viewable and visible to any third party viewing the listings.

86. Defendants have also attacked Kevin Thobias, Nutragroup's CEO, by falsely claiming that he attacks other Amazon sellers, leads a "cartel" that engages in criminal conduct and sells unsafe dietary supplements, and is otherwise unethical.

87. Defendants' false and misleading statements with respect to Nutragroup products and Mr. Thobias's conduct and character damage Nutragroup's business reputation by presenting the company as unethical and its products as unreliable and potentially hazardous to consumers.

88. Nutragroup has been and continues to be damaged by Defendants' false or misleading representations of fact through the diversion of sales, loss of control over its reputation, and loss of goodwill.

89. Defendants know that their representations of fact are false or misleading.

90. Defendants' acts are causing and continue to cause Nutragroup irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. This irreparable harm to Nutragroup will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

91. Nutragroup is entitled to an award of any damages sustained in an amount to be determined at trial, together with punitive damages, attorneys' fees, and the costs of the action.

### THIRD CAUSE OF ACTION

(PRODUCT DISPARAGEMENT UNDER N.Y. COMMON LAW)

92. Nutragroup repeats and realleges paragraphs 1 through X as if fully set forth herein.

93. Defendants Joseph Nilsen and Digital Checkmate have uploaded malicious flat files to change Nutragroup product listings and inserted false and misleading factual representations about the characteristics and quality of Nutragroup's products. In particular, Defendants have falsely represented that Nutragroup products contain chemicals and drug formulations such as testosterone, phenolphthalein, Niubian, and phentermine, and present a choking hazard to consumers.

94. Defendants also purchased Nutragroup products from Amazon in bulk and posted baseless negative reviews and "seller feedback" on the relevant product listings, falsely claiming that such products were counterfeit, expired, or otherwise inauthentic or unsafe. Defendants' negative reviews and feedback are publicly viewable and visible to any third party viewing the listings.

95. These false representations denigrate the quality of Nutragroup's products and damage Nutragroup's business reputation by presenting its products as unreliable and potentially hazardous to consumers.

96. Defendants have no privilege to make these false representations.

97. Defendants knew their statements about Nutragroup products were false.

98. Defendants' false representations damage Nutragroup's market reputation and have dissuaded consumers from purchasing the products.

99. Defendants' acts have caused and will continue to cause Nutragroup irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. This irreparable harm to Nutragroup will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

100. Nutragroup is entitled to an award of any damages sustained in an amount to be determined at trial, together with punitive damages, attorneys' fees, and the costs of the action.

**FOURTH CAUSE OF ACTION**

VIOLATION OF NEW YORK GEN. BUS. LAW § 349

101. Nutragroup repeats and realleges paragraphs 1 through X as if fully set forth herein.

102. Nutragroup's Amazon product listings are essentially commercial advertisements intended to promote particular products, through which Nutragroup products are sold and distributed to thousands of consumers throughout New York and the United States generally.

103. Defendants Joseph Nilsen and Digital Checkmate are commandeering these product listings to make false and deceptive claims about the products' safety and quality. This is "consumer-oriented" conduct intended to cause concern among consumers about the safety and efficacy of Nutragroup products.

104. Defendants' false and materially misleading claims that these products cure serious illnesses, contain prohibited chemicals and prescription-only narcotics, and are produced by a criminal cartel cause concern among consumers and have dissuaded consumers from purchasing the products.

105. Beyond the impact on consumers, Nutragroup has been and continues to be damaged by Defendants' false or misleading representations of fact through the diversion of sales, loss of control over its reputation, and loss of substantial consumer goodwill.

106. Nutragroup has been and continues to be injured by Defendants' false or misleading representations of fact.

107. Defendants' acts have caused and will continue to cause Nutragroup irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. This irreparable harm to Nutragroup will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

108. Nutragroup is entitled to an award of any damages sustained in an amount to be determined at trial, together with punitive damages, attorneys' fees, and the costs of the action.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiffs respectfully request judgment as follows:

A. For temporary, preliminary and permanent injunctive relief prohibiting Defendants, their agents, or anyone working for, in concert with or on behalf of Defendants from engaging in false or misleading advertising with respect to Nutragroup or its products, and/or violating Section 43(a) of the Lanham Act and/or New York Gen. Bus. Law § 349, which relief includes but is not limited to removal of all false or misleading

advertisements and corrective advertising to remedy the effects of Defendants' false advertising;

B. For temporary, preliminary and permanent injunctive relief prohibiting Defendants, their agents, or anyone working for, in concert with or on behalf of Defendants, from publishing further disparaging and defamatory statements about Nutragroup, Nutragroup products, and/or Mr. Thobias;

C. For an order requiring Defendants to correct any erroneous impression persons may have derived concerning the safety, nature, characteristics, or qualities of Nutragroup's products, including without limitation the placement of corrective advertising and providing written notice to the public;

D. That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Nutragroup by using false, deceptive or misleading statements of fact that misrepresent the safety, nature, quality, and characteristics of Nutragroup's products;

E. That Defendants be adjudged to have violated New York Gen. Bus. Law § 349 by engaging in deceptive trade practices and injuring Nutragroup by using deceptive representations in connection with its goods or services;

F. That Nutragroup be awarded damages Nutragroup has sustained as a consequence of Defendants' conduct;

G. That Nutragroup be awarded profits obtained by Defendants as a consequence of their conduct;

H. That Nutragroup recover its costs and attorneys' fees;

I. That all of Defendants' misleading and deceptive materials be removed and destroyed pursuant to 15 U.S.C. § 1118;

J. That Nutragroup be granted prejudgment and post-judgment interest; and

K. That the Court grant to Nutragroup such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a jury trial on all triable issues.

DATED: July 2, 2019         /s/ Lorenz Wolffers
                            Lorenz Wolffers
                            Wolffers Cohen & Edderai, LLP
                            325 W. 38th Street, Suite 1502
                            New York, NY
                            lorenz@wolfferscohen.com